Terry Ray YOUNG, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. C–76–358.

Court of Criminal Appeals of Oklahoma.

June 23, 1976.

Leslie R. Earl, Jr., Public Defender, Thomas W. Burns, Asst. Public Defender, Tulsa County, for petitioner.

S. M. Fallis, Jr., Dist. Atty., David K. Robertson and J. Pat Thompson, Asst. Dist. Attys., Tulsa County, Tulsa, for respondent.

## OPINION

BLISS, Judge:

Petitioner, Terry Ray Young, was convicted upon his plea of guilty in the District Court, Tulsa County, Case No. CRF-75-2699, for the offense of Unauthorized Use of a Motor Vehicle, in violation of 47 O.S.1971, § 4-102. Pursuant thereto, the trial court sentenced the petitioner to a term of imprisonment of eighteen (18) months. Petitioner timely filed a motion to withdraw his plea of guilty, which upon hearing was overruled by the District Court, Tulsa County, and from this ruling the instant petition for writ of certiorari has been filed in this Court. We assume jurisdiction and proceed to dispose of the matter.

The instant appeal is predicated solely upon the contention that the trial court, at the sentencing hearing, erred in considering a presentence investigation and report [1] which contained specific references to the petitioner's prior juvenile record. The petitioner contends that consideration of a prior juvenile record is an improper consideration in determining what sentence will be imposed against an adult offender and such a consideration violates the statutory proscription in 10 O.S.1971, § 1127, and this Court's prior holding in *Lauen v. State*, Okl.Cr., 515 P.2d 578 (1973). Title 10 O.S.1971, § 1127, provides in pertinent part:

". . . A disposition of any child under this Act, or any evidence given in such cause, shall not in any civil, criminal or other cause or proceeding in any court be lawful or proper evidence against the child for any purpose whatever, except in subsequent cases against the same child under this Act. . . ."

Petitioner alludes to this Court's language in *Lauen v. State,* supra, wherein the Court states:

". . . They [juvenile records] are not a proper consideration in the assess-

1. Title 22 O.S.Supp.1975, § 982, mandatorily provides for a presentence investigation and report as follows:

"Whenever a person is convicted of a felony except when the death sentence is imposed, the court shall, before imposing sentence to commit any felon to incarceration by the Department of Corrections, order a presentence investigation to be made by the Division of Probation and Parole of the Department. The Division shall thereupon inquire into the circumstances of the offense, and the criminal record, social history and present condition of the convicted person; and shall make a report of such investigation to the court, including a recommendation as to appropriate sentence, and specifically a recommendation for or against probation. Such reports must be presented to the judge so requesting, within a reasonable time, and upon the failure to so present the same, the judge may proceed with sentencing. Whenever, in the opinion of the court or the Division, it is desirable, the investiga-

tion shall include a physical and mental examination of the convicted person. The reports so received shall not be referred to, or be considered, in any appeal proceedings. Before imposing sentence, the court shall advise the defendant or his counsel and the district attorney of the factual contents and the conclusions of any presentence investigation or psychiatric examination and afford fair opportunity, if the defendant so requests, to controvert them. If either the defendant or the district attorney desires, such hearing shall be ordered by the court providing either party an opportunity to offer evidence proving or disproving any finding contained in such report, which shall be a hearing in mitigation or aggravation of punishment.

"If the district attorney and the defendant desire to waive such presentence investigation and report, both shall execute a suitable waiver subject to approval of the court, whereupon the judge shall proceed with the sentencing."

ment of the punishment to be imposed upon defendant. Although the above section of the statute refers to 'evidence given in such cause,' it is this Court's opinion the language 'for any purpose whatever' prohibits the use of these records in an argument. Consequently, the manifestation of a juvenile record influencing an imposed punishment will be grounds for modification."

Thus at issue is this Court's prior construction of 10 O.S.1971, § 1127, concluding that the statute prohibits use of an adult offender's prior juvenile record during an aggravation mitigation hearing as contemplated by 22 O.S.1971, § 973,[2] and the applicability of this construction to the use of a presentence investigation report containing the prior juvenile record of an adult offender before the court.

We are compelled to re-examine and ascertain the intent of the legislative enactment, 10 O.S.1971, § 1127, and the viability of our holding in *Lauen v. State,* supra.

Many states have statutory provisions comparably worded to 10 O.S.1971, § 1127, and its apparent restriction of the use of juvenile records.[3] Particularly instructive is the lengthy discourse in *People v. McFarlin,* 389 Mich. 557, 208 N.W.2d 504, 64 A.L.R.3d 1274 (1973), wherein a statute[4]

comparably worded to 10 O.S.1971, § 1127, was construed not to prohibit a presentence investigation report from including information concerning the juvenile history of an adult offender. The court observed that decisions of other states although not controlling, revealed the clear weight of judicial authority is in favor of full disclosure of a defendant's past, including his juvenile court history, to the sentencing judge. *People v. McFarlin,* 208 N.W.2d 510; also see, 64 A.L.R.3d at 1295.

We note that the heretofore quoted portion of the language of 10 O.S.1971, § 1127, has been carried forward without substantial change since the legislative enactment in S.L.1909, Ch. 13, Art. I, § 594, which in pertinent part reads:

". . . A disposition of any child under this Act or any evidence given in such cause, shall not in any civil, criminal or other cause or proceedings whatever in any court be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this Act. . . ."

The intent of this particular statutory language obviously was formulated several decades prior to the enactment of the presentence investigation report procedure.[5]

---

2. Title 22 O.S.1971, § 973, provides as follows:

"After a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

3. See, I Wigmore on Evidence (3rd ed.), § 196, p. 673, fn. 5, and 64 A.L.R.3d 1291.

4. " 'A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in

subsequent cases against the same child under this chapter.' M.C.L.A. § 712A.23; M.S.A. § 27.3178(598.23)."

5. Not until 1967 did the statutes of this State provide for a presentence investigation or report. The pertinent statutes were 22 O.S.Supp.1967, § 982, which provided:

"Upon plea of guilty, or verdict of conviction, in all felony cases, where the court desires more information, it may make suitable disposition of the custody of the defendant and request the Department of Pardon and Parole or its successor to make a study of the defendant. This study shall include, but not be limited to, the defendant's previous delinquency, his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. Within thirty (30) days from the date this request is

At the time of the drafting of this statutory language, the trial judge in determining the sentence, in a situation where discretion of sentence was conferred upon the court, would only have the alternative of hearing other evidence in mitigation or aggravation of punishment upon motion by either party.[6] Greater emphasis is now placed upon a particularized sentence for a particular individual, and this is evidenced by the enacted presentence investigation procedure and the particular statutes regarding the sentencing powers of the court. See, 22 O.S.1971, § 991a, et seq.

In *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court of the United States stated:

". . . Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

\* \* \* \* \* \*

"Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and in-

made by the court, or within such extended time as the court may allow, the Pardon and Parole Board shall make a written report to the court, a copy of such report to be given to the defendant and District Attorney, which shall be filed with the court clerk, unless otherwise ordered by the court. After receiving such report, the court shall impose such sentence as he deems warranted, which shall run from the date of the plea of guilty, or conviction.";
and also, 57 O.S.Supp.1967, § 519, provided:
"Whenever a person is convicted of a felony, except when the death sentence is imposed, the Court may, before imposing sentence, order a presentence investigation to be made by the Division of Probation and Parole of the Department. The Division shall thereupon inquire into the circumstances of the offense, and the criminal record, social history and present condition of the convicted person; and shall make a report of such investigation to the Court. Whenever, in the opinion of the Court or the Division it is desirable, the investigation shall include a physical and mental examination of the convicted person."
However, in 1974, 57 O.S.Supp.1967, § 519, was amended to read as follows:
"[W]henever a person is convicted of a felony, except when the death sentence is imposed, the court shall, before imposing sentence to commit any felon to incarceration by the Department of Corrections, order a presentence investigation to be made by the Division of Probation and Parole of the Department. The Division shall thereupon inquire into the circumstances of the offense, and the criminal record, social history and present condition of the convicted person; and shall make a report of such investigation to the court, including a recommendation as to appropriate sentence, and specifically a recommendation for or against probation. Such reports must be presented to the judge so requesting, within a reasonable time, and upon the failure to so present the same, the judge may proceed with sentencing. Whenever, in the opinion of the court or the Division it is desirable, the investigation shall include a physical and mental examination of the convicted person. The reports so received shall not be referred to, or be considered, in any appeal proceedings, and such reports shall be confidential with the judge so making the request; except that the portion dealing with the factual aspects of the report may be reviewed by the district attorney or defendant upon proper cause, within the discretion of the judge."
And subsequently, the Legislature repealed 57 O.S.Supp.1975, § 519, and substantially incorporated it into an amended form of 22 O.S.1971, § 982, which currently is 22 O.S. Supp.1975, § 982, supra, fn. 1.

6. See, Statutes 1890, § 5721, now 22 O.S. 1971, § 973, supra, fn. 2.

adequate information. . . ." (Footnotes omitted)

In *People v. McFarlin,* supra, the court observed:

"The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. While the resources allocated for rehabilitation may be inadequate and some persons question whether rehabilitation can be achieved in the prison setting, this view of sentencing is the present policy of the state. A judge needs complete information to set a proper individualized sentence. A defendant's juvenile court history may reveal a pattern of law-breaking and his response to previous rehabilitative efforts. This, together with information concerning underlying social or family difficulties, and a host of other facts are essential to an informed sentencing decision, especially if the offender is a young adult.

"Some adult offenders may indeed serve longer prison sentences because of information developed from the official juvenile court record. But others, because the presentence report is a complete and reliable chronicle, may serve shorter sentences or not be imprisoned at all. Such differentiation in sentencing predicated on differences in the backgrounds of offenders is contemplated by the indeterminate sentencing and probation acts. The objectives of those acts and of the restriction on the use of a juvenile record are entirely reconcilable."

Thus, the court concluded that a presentence investigation and report may contain the juvenile history of the adult offender. Also, in *Berfield v. State,* 458 P.2d 1008 (Alaska 1969), the Alaska court stated:

"A judge, of all persons, should be most cognizant of the existence and meaning of AS 47.10.080(g), and of the fact that under that statute a juvenile offender may not be considered a criminal even though he has suffered a criminal conviction. But the judge cannot simply ignore that phase of appellant's life—before he reached 18 years of age—as though it did not exist—particularly when appellant was only 21 years old when sentenced. The judge is not required to operate in a vacuum. In sentencing a 21 year old person, the life, characteristics, and background behavior of that person prior to reaching the age of 18 years might be highly relevant. It should be noted that the judge cannot consider a juvenile offense as a criminal conviction for the purpose of prescribing a mandatory sentence. But that was not done in this case. The judge's consideration of factors relating to appellant's life, characteristics, background and behavior prior to reaching the age of 18 years does not mean that he considered appellant a criminal or that he was using the juvenile offenses as criminal convictions in determining the sentence to impose." (Footnotes omitted)

In *Walker v. State,* Tex.Cr.App., 493 S. W.2d 239 (1973), the Texas Court observed:

"It makes a great deal of sense that the judge should have before him a thorough report of the accused's past record and background, when considering his motion for probation. The very purpose of granting probation is to release a convicted defendant who shows himself capable of adhering to certain conditions. The present appellant was 18 years old at the time of trial. The principles just enunciated apply even more so in such a case. It would be ridiculous to conclude that an 18-year-old with a lengthy juvenile record should be granted the same consideration as someone of the same age with a spotless record."

We are of the opinion that the juvenile history of an adult offender is competent and relevant information of the social history of the adult offender and it

is properly included in a presentence investigation and report to facilitate the trial court's determination of the appropriate sentence for the particular adult offender. We conclude that such information is not "evidence against the child" within the proscription of 10 O.S.1971, § 1127. In *Mitchell v. Gladden,* 229 Or. 192, 366 P.2d 907 (1961), that court noted:

> ". . . There is no proscription against the use of such evidence against a person after he has reached his majority. The obvious purpose of the statute is to protect a child from the stigma of his wrongdoing in his effort to rehabilitate himself. When he is no longer a child and when it is demonstrated by his conviction that he has not rehabilitated himself, there is no longer any reason to preclude the use of the evidence in the juvenile proceedings for the purpose of fixing his sentence. . . ." [7]

Consistent with our conclusion is the fact that the Legislature has not enacted mandatory expungement statutes. Our current expungement statute, 10 O.S.1971, § 1506, reads as follows:

> "Whenever any person who as a minor has been adjudged to be a delinquent child, or a child in need of supervision, by the District Court or the now defunct juvenile, children's or county court and is reformed and has been of good behavior since reaching majority, the court may upon expiration of five (5) years after said person attains majority upon its own motion or upon the petition of the probation officer or probation counselor, or said person, either with or without a formal hearing as the court determines, ascertain whether said delinquent, or a child in need of supervision, has been of good behavior since majority."

A child who having a juvenile record, upon reaching majority, leads a life of good behavior for five years is entitled to have his records expunged and obliterated.

However, the court may continue the matter for a period of one year at its discretion. Certainly the retention of juvenile records must serve some purpose and we find one just and appropriate purpose is the use of a prior juvenile record in the sentencing of an adult offender who obviously has not been benefited from society's efforts to rehabilitate him.

■ In conclusion we are of the opinion that the trial court's consideration of an adult offender's juvenile record should be limited to the "hard-core" legal facts such as the pertinent facts of adjudication, disposition and the rehabilitative history surrounding the disposition.

For all the above and foregoing reasons, we find the trial court did not err in the consideration of the petitioner's juvenile record as reflected in the presentence investigation and report and thus the petition for certiorari is DENIED.

BRETT, P. J., specially concurs.

BUSSEY, J., concurs.

BRETT, Presiding Judge (specially concurring).

I concur in the decision reached in the majority's opinion. I feel it necessary to emphasize, however, that today's holding is limited to the use of defendant's juvenile court record in a pre-sentencing report authorized by 22 O.S.Supp., § 982, the purpose of which is to aid the trial judge in tailoring punishment to fit the individual offender. These confidential juvenile court records are not directly available, for example, to the office of the prosecutor.

I emphasize also that today's opinion limits the portions of the juvenile records available to the court to "hard-core legal facts such as the pertinent facts of adjudication, disposition and rehabilitative history surrounding the disposition." This limitation upon availability is, I believe, wise and necessary because records made of the

---

7. See also, *Jewell v. State,* 261 Ind. 665, 309 N.E.2d 441 (Ind.1974), and *Massey v. State,* Del. Supr., 256 A.2d 271 (1969).

social and family history of a juvenile offender often describe in some detail the characteristics, habits and life style of his family, friends and associates which information may not be germane to the decision to be made by the court and may constitute an unreasonable invasion of the privacy of those persons.