[Crim. No. 20651. Mar. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEE CHEATHAM, Defendant and Appellant.

830

## Counsel

Mary L. Baca, under appointment by the Supreme Court, for Defendant and Appellant.

Quin Denvir, State Public Defender, Ezra Hendon, Chief Assistant State Public Defender, Richard E. Shapiro and Richard L. Phillips, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Edward T. Fogel, Jr., Cynthia S. Waldman, Janelle B. Davis and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CLARK, J.—■** The question presented is whether the Judicial Council exceeded its authority under Penal Code section 1170, subdivision (b), by providing in rules 421(b) and 423(b), California Rules of Court, for consideration of "facts relating to the defendant" as circumstances in aggravation or mitigation of a crime. We conclude the rules are consistent with the intent of the legislation.

Defendant was found guilty of first degree burglary (Pen. Code, §§ 459, 460)[1] on the following evidence: Venus Hurst fell asleep one evening in front of the television set in the living room of her apartment in a retirement home. Early the next morning Andrew Truesdale, a security guard employed by the home, noticed a screen was missing from Miss Hurst's bedroom window. As Mr. Truesdale approached to investigate, he first found a television set on the ground beside the window, and then observed defendant crouching behind a bush three feet away. When Miss Hurst was awakened by the police she discovered that her television set was missing and that her bedroom had been ransacked. The missing set was the set found on the ground outside her window.

Defendant was sentenced to prison for a total of six years. The court imposed the upper term—four years—for burglary (former § 461) on the ground there were circumstances in aggravation of the crime. (§ 1170, subd. (b).) This term was enhanced by two consecutive one-year terms for prior prison sentences defendant had served for a 1964 conviction for

---

[1]All statutory references will be to sections of the Penal Code unless otherwise specified.

robbery (§ 211) and a 1972 conviction for involuntary manslaughter (§ 192, subd. 2) with use of a firearm (§ 12022.5). (§ 667.5.)

In justification of its imposition of the upper term the court found that two factors aggravated defendant's crime: (1) Defendant was on parole when he committed the burglary; and (2) defendant's prior convictions as an adult were of increasing seriousness.

Correctly identifying these factors as "facts relating to the defendant," as that phrase is used in rules 421(b) and 423(b), defendant contends such factors may not be considered by the sentencing court in exercising its discretion under section 1170, subdivision (b), to impose the upper or lower term for an offense.[2] The underlying question presented by this contention is, as previously stated, whether the Judicial Council exceeded its authority under section 1170, subdivision (b), by providing in rules 421(b) and 423(b) for consideration of "facts relating to the defendant" —as opposed to "facts relating to the crime"—as circumstances in aggravation or mitigation of an offense.

Section 1170, subdivision (b), provides in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." In order to promote uniformity of sentencing under this provision, the Legislature authorized the Judicial Council to adopt rules providing criteria for the consideration of judges in deciding to impose the upper or lower term. (§ 1170.3.) Pursuant to this authority the Judicial Council adopted rules 421 and 423, dealing respectively with circumstances in aggravation and mitigation of an offense. (Judicial Council of Cal., Annual Rep. (1978) p. 3.)

---

[2]Section 1170, subdivision (b), provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. At least four days prior to the time set for imposition of judgment either party may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7. A term of imprisonment shall not be specified if imposition of sentence is suspended."

"Facts relating to the crime" are set forth in subdivision (a), and "facts relating to the defendant" in subdivision (b), of each rule. The facts relating to the defendant which bear on aggravation "includ[e] the fact that: (1) He has engaged in a pattern of violent conduct which indicates a serious danger to society. (2) The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness. (3) The defendant has served prior prison terms whether or not charged or chargeable as an enhancement under section 667.5. (4) The defendant was on probation or parole when he committed the crime. (5) The defendant's prior performance on probation or parole was unsatisfactory." (Cal. Rules of Court, rule 421(b).) The factors relied upon here were, of course, the second and the fourth.

### Defendant's Argument

Defendant correctly observes that rules adopted by the Judicial Council may not be "inconsistent with statute." (Cal. Const., art. VI, § 6.) As previously stated, rules 421 and 423 were promulgated by the Judicial Council pursuant to a legislative grant of authority to adopt rules "to promote uniformity in sentencing." (§ 1170.3.) But, defendant argues, those rules undermine rather than promote uniformity of sentencing insofar as they provide for consideration of the defendant's individual characteristics as circumstances in aggravation or mitigation of his crime. Therefore, defendant concludes, rules 421(b) and 423(b) must be disapproved. (See *In re Robin M.* (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1].)

Developing his argument, defendant points to section 1170, subdivision (a), as evidence the Legislature has repudiated a basic principle of the old indeterminate sentencing law—that the punishment should fit the criminal rather than the crime (cf. *In re Lee* (1918) 177 Cal. 690, 692 [171 P. 958].) Section 1170, subdivision (a)(1) provides: "The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to *the seriousness of the offense* with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances. The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to *the seriousness of the offense* as determined by the Legislature to be imposed by the court with specified discretion." (Italics added.)

By referring in section 1170, subdivision (b), to "circumstances in aggravation or mitigation *of the crime*" (italics added), the Legislature clearly indicated, defendant asserts, the personal history of the defendant is not to be considered by the sentencing court in determining whether to impose the upper or lower term. The significance of the Legislature's choice of language becomes apparent, defendant urges, when section 1170, subdivision (b), is compared with section 1203. While the former speaks of "circumstances in aggravation or mitigation of the crime," the latter provides that, to assist the court in exercising its discretion to grant or deny probation, the probation officer is to investigate and report to the court "upon the circumstances surrounding the crime *and the prior history and record of the person*" (§ 1203, subd. (a), italics added).

In conclusion, defendant contends the meaning of the phrase "circumstances in aggravation or mitigation of the crime" is so plain no need of interpretation arises, but that if there is ambiguity, it must be resolved in favor of the offender.

## *Discussion*

Defendant makes a colorable argument in support of his position, but he overstates his case in claiming the statute is unambiguous. The phrase in question must be read in light of the entire statutory system of which it is a part. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; *People* v. *Ruster* (1976) 16 Cal.3d 690, 696 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) The necessity of interpretation then becomes apparent.

Recognizing the matter is not free from doubt, the Sentencing Practices Advisory Committee to the Judicial Council in its comment on rule 421 addressed itself to the question whether "[f]acts concerning the defendant's prior record and personal history may be considered" as aggravating or mitigating circumstances under section 1170, subdivision (b). In answering in the affirmative, the committee noted the statute provides "[t]he court may not impose an upper term by using the same fact used to enhance the sentence under Section 667.5," among other sections.[3] Section 667.5 provides for enhancement of prison terms for new offenses on the basis of prior prison terms for felonies. As the committee points out: "By providing that the defendant's prior record . . . may not be used both for enhancement and in aggravation, section 1170(b) indicates that

---

[3]For the full text of section 1170, subdivision (b), see footnote 2, *ante.*

these and other facts extrinsic to the commission of the crime may be considered in aggravation in appropriate cases. This resolves whatever ambiguity may arise from the phrase, 'circumstances in aggravation . . . of the crime.' The phrase, 'circumstances in aggravation or mitigation of the crime' necessarily alludes to extrinsic facts." (Judicial Council of Cal., Annual Rep. (1978) p. 16.)

In further support of its position, the committee argued: "Refusal to consider the personal characteristics of the defendant in imposing sentence would also raise serious constitutional questions. The California Supreme Court has held that sentencing decisions must take into account 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.' *In re Rodriguez* (1975) 14 Cal.3d 639, 654, quoting *In re Lynch* (1972) 8 Cal.3d 410, 425. *In re Rodriguez* released petitioner from further incarceration because '[I]t appears that neither the circumstances of his offense *nor his personal characteristics* establish a danger to society sufficient to justify such a prolonged period of imprisonment.' *Id.,* at 655. (Footnote omitted, emphasis added.) 'For the determination of sentences, justice generally requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' *Pennsylvania* v. *Ashe* (1937) 302 U.S. 51, 55 quoted with approval in *Gregg* v. *Georgia* (1976) 428 U.S. 153, 189, 49 L.Ed.2d 859, 883." (Judicial Council of Cal., *supra,* p. 16.)

Implicitly relying on the principle that an interpretation must be adopted which, consistent with a statute's language and purpose, eliminates doubts as to its constitutionality (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]), the committee argues the section would be of doubtful constitutionality were it interpreted as defendant urges. Responding to this argument, amicus State Public Defender seeks to distinguish *Lynch* and *Rodriguez* as cases arising under the old indeterminate sentencing law, and argues that while the sentencing judge was required to take the offender's personal characteristics into consideration under that system, he may not do so under the present law. Amicus also contends the committee's reliance on *Pennsylvania* v. *Ashe* (1937) 302 U.S. 51 [82 L.Ed. 43, 58 S.Ct. 59] is misplaced. In *Lockett* v. *Ohio* (1978) 438 U.S. 586, 604 [57 L.Ed.2d 973, 990, 98 S.Ct. 2954, 2965], amicus points out, the high court stated "in noncapital cases, the established practice of individualized sentences rests not on constitutional commands but public policy enacted into statutes."

We need not reach the constitutional question even obliquely. Whether or not the Legislature *could* constitutionally have precluded the sentencing judge from considering "facts related to the defendant" in deciding to impose the upper or lower term, close analysis of the statute reveals the Legislature has *not* done so.

The inference to be drawn from the reference in section 1170, subdivision (b), to section 667.5 has already been mentioned. Even more significant is the following provision in section 1170, subdivision (b): "In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the . . . probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing."[4] As previously noted, a probation report covers not only "the circumstances surrounding the crime," but also "the prior history and record" of the defendant. (§ 1203, subd. (a).) ■ "As used in section 1203, 'history' is a catchall term used to refer to the multitude of factors, in addition to the circumstances surrounding the crime and the defendant's prior record, which properly may be considered in determining whether the defendant should be granted probation." (*People* v. *Warner* (1978) 20 Cal.3d 678, 685-686 [143 Cal.Rptr. 885, 574 P.2d 1237].) A diagnostic report under section 1203.03 is similarly wide ranging. (See L.A. Super. Ct. Criminal Trial Judges' Deskbook, p. 376.) The most reasonable explanation of this provision is the obvious one: that the Legislature intended the sentencing court to consider the defendant's prior history and record, as well as facts relating to the commission of the crime, in determining whether there are circumstances that justify imposition of the upper or lower term.

Amicus State Public Defender concedes, as he must, the sentencing court is permitted to consider "facts relating to the defendant" in exercising its discretion to grant or deny probation. However, amicus contends, consideration of the same facts when, probation having been denied, a state prison sentence is imposed would undermine uniformity in sentencing. The short answer to this contention: Given that two-thirds of all convicted felons are granted probation (Crime & Delinquency in Cal., pt. 2 (Refer. Tables, Cal. Dept. of Justice, Bur. of Crim. Stats. 1977) table 1, p. 5), if consideration of "facts relating to the defendant" were in the Legislature's view inimical to uniform sentencing, it would not have provided for consideration of such facts at the probation hearing.

---

[4] Again, for the full text of section 1170, subdivision (b), see footnote 2, *ante.*

As for the principle that ambiguity in a criminal statute must be resolved in favor of the offender (see *People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401]), the interpretation urged by defendant would work to the disadvantage of the offender whenever "facts relating to the defendant" would justify imposition of the lower term.

The remaining contentions raised by defendant have been carefully considered by this court and have no merit.

The judgment is affirmed.

Mosk, Acting C. J., Richardson, J., Taylor, J.,* Elkington, J.,* and Kane, J.,* concurred.

**NEWMAN, J.,** Dissenting.—"[T]he purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of *the offense* with provision for uniformity in the sentences of offenders committing *the same offense* under similar circumstances. The . . . provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of *the offense* . . . ." Further, when choosing an upper, middle, or lower term of sentence, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of *the crime.*"

Those are the Legislature's words. (Pen. Code, § 1170, subds. (a)(1) and (b); italics added.) Yet in this case the majority endorse two Judicial Council rules that authorize the sentencing courts to consider not only "facts relating to the crime" but also "facts relating to the defendant." I dissent. The Judicial Council rules are ultra vires, I believe, because they are not consistent with section 1170. They flout the finding of the Legislature that "the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense." (See my preceding paragraph.) The Legislature clearly has pronounced that the punishment should fit the crime, not the criminal.

I have been persuaded by the State Public Defender's brief filed here on February 9, 1979, that "The court should determine the legislative intent by focusing on those portions of the Determinate Sentencing Law

---

*Assigned by the Acting Chairperson of the Judicial Council.

(DSL) directly on point, rather than relying on other statutory provisions that predate the DSL or [on] peripheral parts of the DSL itself which deal with different subjects." (See also his brief filed on Oct. 20, 1978 for persuasive critique of the reasoning of the Judicial Council Advisory Committee.)